IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CATHERINE COFFMAN,

    Plaintiff,

v.

DOMTAR CORPORATION,
GIANNELLA ALVAREZ,
ROBERT E. APPLE,
DAVID J. ILLINGWORTH,
BRIAN M. LEVITT,
DAVID G. MAFFUCCI,
DENIS TURCOTTE, and
JOHN D. WILLIAMS

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Catherine Coffman ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Domtar Corporation ("Domtar" or the "Company") and the members of Domtar's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Domtar will be acquired by Paper Excellence B.V. ("Paper

Excellence") through its affiliates Karta Halten B.V. ("Parent") and Pearl Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2. On May 11, 2021, Domtar and Paper Excellence issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 10, 2021 (the "Merger Agreement") to sell Domtar to Paper Excellence. Under the terms of the Merger Agreement, Domtar shareholders will receive $55.50 in cash for each share of Domtar common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $3.0 billion.

3. On June 21, 2021, Domtar filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Domtar stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) Morgan Stanley's and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Domtar's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates a distribution center in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Domtar.

9. Defendant Domtar is a Delaware corporation, with its principal executive offices located at 234 Kingsley Park Drive, Fort Mill, South Carolina 29715 and a distribution center located in Denver, Colorado. The Company is a leading provider of a wide variety of fiber-based products. Domtar's common stock trades on the New York Stock Exchange under the ticker symbol "UFS."

10. Defendant Giannella Alvarez ("Alvarez") has been a director of the Company since 2012.

11. Defendant Robert E. Apple ("Apple") is Chairman of the Board and has been a director of the Company since 2012.

12. Defendant David J. Illingworth ("Illingworth") has been a director of the Company since 2013.

13. Defendant Brian M. Levitt ("Levitt") has been a director of the Company since 2007.

14. Defendant David G. Maffucci ("Maffucci") has been a director of the Company since 2011.

15. Defendant Denis Turcotte ("Turcotte") has been a director of the Company since 2007.

16. Defendant John D. Williams ("Williams") has been President, Chief Executive Officer ("CEO"), and a director of the Company since 2009.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Paper Excellence, a private limited company organized under the laws of the Netherlands and registered in the Dutch trade register, is a wholly owned subsidiary of Fortune Everich Sdn Bhd., a Malaysian private company limited by shares ("Fortune"). Headquartered in British Columbia, it is a diversified manufacturer of pulp and specialty, printing, writing, and packaging papers. Paper Excellence operates seven mills in Canada producing and shipping over 2.8 million tonnes annually with a workforce of more than 2,800.

19. Parent is a private limited company organized under the laws of the Netherlands and an affiliate of Paper Excellence.

20. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Domtar designs, manufactures, markets and distributes a wide variety of fiber-based products, including communication papers, specialty and packaging papers. The foundation of Domtar's business is a network of wood fiber converting assets that produce paper grade, fluff and specialty pulp. Approximately 40% of the Company's pulp production is consumed internally to manufacture paper, with the balance sold as market pulp.

22.     Domtar is the largest integrated marketer of uncoated freesheet paper in North America serving a variety of customers, including merchants, retail outlets, stationers, printers, publishers, converters and end-users. With approximately 6,400 employees serving more than 50 countries around the world, Domtar turns sustainable wood fiber into useful products that people rely on every day. Domtar's annual sales are approximately $3.7 billion.

23.     On May 6, 2021, Domtar announced its preliminary first quarter 2021 financial results. The Company reported a net loss of $29 million ($0.54 per share) for the first quarter of 2021 compared to a net loss of $59 million ($1.07 per share) for the fourth quarter of 2020. The Company also reported earnings from continuing operations of $5 million ($0.09 per share) for the first quarter of 2021, compared to a loss from continuing operations of $15 million ($0.27 per share) for the first quarter of 2020. Operating income was $2 million in the first quarter of 2021, compared to an operating loss of $20 million in the fourth quarter of 2020 and an operating loss of $1 million in the first quarter of 2020. Reflecting on the Company's results, defendant Williams stated:

> While COVID-19 continued to remain the dominant challenge in the first quarter, severe winter weather affected our production and our supply chains across North America, notably at our Ashdown, AR market pulp mill. Nevertheless, we got off to a reasonably good start to the year and we expect strong second half results driven by price momentum and strong volume in paper and pulp. The Kingsport conversion is progressing well. The project is on schedule, and the crews on site are currently completing demolition and preparing the site for the new buildings

and warehouse. We are also making good progress with our commercial strategy and the customer response continues to be extremely positive.

During the quarter, we successfully closed the sale of the Personal Care business. The sale is part of our ongoing effort to strategically optimize our portfolio and it allowed us to strengthen our balance sheet, enhance liquidity and repurchase shares.

**The Proposed Transaction**

24.     On May 11, 2021, Domtar and Paper Excellence issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> RICHMOND, British Columbia & FORT MILL, S.C.—May 11, 2021– Paper Excellence, a global diversified manufacturer of pulp and specialty, printing, writing, and packaging papers, and Domtar (NYSE: UFS) (TSX: UFS), a leading provider of fiber-based products, today announced that they have entered into a strategic business combination under which the Paper Excellence group of companies will acquire all of the issued and outstanding shares of Domtar common stock for $55.50 per share, in cash.
>
> The purchase price represents a premium of approximately 37% to Domtar's closing share price on May 3, 2021, the last trading day prior to the Domtar's statement responding to media reports regarding a potential business combination between Domtar and Paper Excellence, and a premium of approximately 44% to the 30-day volume-weighted average price as of May 3, 2021. The all-cash transaction represents an enterprise value of approximately $3.0 billion.
>
> After the transaction closes, Paper Excellence intends to continue the operations of Domtar as a stand-alone business entity. As such, Domtar will continue to be led by its management team and Paper Excellence plans to retain its corporate and production locations.
>
> Joe Ragan, Global Chief Financial Officer of Paper Excellence, commented, "We are excited to add Domtar and its employees to the Paper Excellence global family. This marks a major step in our global strategy of identifying well-positioned assets and positioning them for growth. Domtar is a natural fit for our culture of operational excellence. We are enthusiastic about entering the American market as we continually improve Paper Excellence's ability to serve its expanding blue-chip customer base."
>
> "We have long admired Domtar's expansive global footprint and believe that it will be a valuable addition to Paper Excellence. We look forward to investing in Domtar's assets and people for long-term growth," concluded Mr. Ragan.
>
> "This agreement enables our shareholders to realize certain and immediate cash value at a significant premium for their shares," said John D. Williams, President

and Chief Executive Officer of Domtar. "This transaction validates our long-term strategic plan for our leading paper and pulp businesses, and for our continued expansion into packaging."

"Our dedicated employees have been instrumental to Domtar's success and I am glad to see that this transaction supports the strategy that our team has worked so hard to develop over the last several years," continued Mr. Williams. "As part of Paper Excellence, we will build on that momentum."

**Insiders' Interests in the Proposed Transaction**

25. Domtar insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Domtar.

26. Notably, it appears members of Domtar management have secured positions with the post-close company. According to the May 11, 2021 joint press release announcing the Proposed Transaction, following the completion of the merger, "Domtar will continue to be led by its management team."

27. In addition, Company insiders stand to reap substantial financial benefits in the form of retention bonuses for securing the deal with Paper Excellence. For example, in connection with the consummation of the merger, the Company has established a retention bonus pool with an aggregate value of approximately $6 million to be allocated to certain executive officers and key employees of the Company in the form of bonuses to encourage retention and motivate such executives and employees to successfully complete the merger. The Company has entered into retention bonus letter agreements with seven executive officers, effective as of April 28, 2021, pursuant to which it has awarded such executives retention bonuses as follows: (i) $350,640 to Ms. Maria Brennan; (ii) $520,000 to Mr. James Edwards; (iii) $455,000 to Mr. Steve Henry; (iv) $420,000 to Ms. Nancy Klembus; (v) $450,000 to Mr. Stephen Makris; (vi) $420,000 to Mr.

Richard McAtee and (vii) $474,500 to Mr. Robert Melton.

28. Moreover, pursuant to the Merger Agreement, all outstanding stock options, restricted stock units ("RSUs"), performance stock units ("PSUs"), change in control RSUs and PSUs ("CIC Year Awards"), and deferred stock units ("DSUs") will vest and convert into the right to receive the Merger Consideration. The following tables summarize the value of DSUs, RSUs, PSUs, and CIC Year Awards that Company insiders stand to receive:

### Non-Employee Director Equity Award Summary Table

| Non-Employee Directors | Company DSUs (#) (1) | Value of Company DSUs ($) (1) |
|---|---|---|
| Giannella Alvarez | 21,344 | $ 1,184,614 |
| Robert E. Apple | 35,417 | $ 1,965,658 |
| David J. Illingworth | 22,357 | $ 1,240,821 |
| Brian M. Levitt | 48,743 | $ 2,705,221 |
| David G. Maffucci | 30,842 | $ 1,711,735 |
| Denis Turcotte | 43,805 | $ 2,431,157 |

### Executive Officer Equity Award Summary Table

| Executive Officers | Company RSUs (#)(1) | Value of Company RSUs ($)(1) | Company PSUs (#)(2) | Value of Company PSUs ($)(2) | CIC Year Awards (#)(3) | Value of CIC Year Awards ($)(3) | Estimated Total Cash Consideration ($) |
|---|---|---|---|---|---|---|---|
| John D. Williams | 79,981 | $4,438,946 | 70,541 | $3,915,012 | 48,533 | $2,693,574 | $11,047,532 |
| Daniel Buron | 21,876 | $1,214,094 | 19,367 | $1,074,886 | 13,432 | $ 745,462 | 3,034,442 |
| Patrick Loulou | 12,297 | $ 682,496 | 10,887 | $ 604,213 | 7,550 | $ 419,008 | 1,705,717 |
| James (Bill) Edwards | 2,206 | $ 122,408 | 1,951 | $ 108,308 | 2,461 | $ 136,559 | 367,275 |
| Robert Melton | 2,299 | $ 127,580 | 2,059 | $ 114,293 | 2,245 | $ 124,614 | 366,487 |
| Steve Henry | 1,999 | $ 110,923 | 1,770 | $ 98,219 | 2,117 | $ 117,506 | 326,648 |
| Stephen Makris | 4,102 | $ 227,678 | 3,966 | $ 220,115 | 3,229 | $ 179,233 | 627,026 |
| Nancy Klembus | 1,502 | $ 83,364 | 1,339 | $ 74,294 | 1,686 | $ 93,595 | 251,253 |
| Richard McAtee | 1,811 | $ 100,487 | 1,602 | $ 88,914 | 1,691 | $ 93,859 | 283,260 |
| Maria Brennan | 1,994 | $ 110,640 | 1,764 | $ 97,895 | 1,438 | $ 79,788 | 288,323 |
| Michael Fagan | — | — | — | — | — | — | — |
| Michael D. Garcia | — | — | 8,225 | $ 456,469 | — | — | $ 456,469 |
| Zygmunt Jablonski | 15,569 | $ 864,080 | 6,984 | $ 387,604 | — | — | $ 1,251,684 |

29. Additionally, if they are terminated in connection with the Proposed Transaction, Domtar insiders stand to receive substantial severance payments as set forth in the following table:

| Name | Cash ($)(2) | Equity ($)(3) | Pension/ NQDC ($)(4) | Perquisites/ Benefits ($)(5) | Total ($) |
|---|---|---|---|---|---|
| John D. Williams | $5,859,295 | $5,567,339 | — | $ 33,561 | $11,460,195 |
| Daniel Buron | $2,746,348 | $1,535,673 | — | $ 25,907 | $ 4,307,928 |

### **The Proxy Statement Contains Material Misstatements or Omissions**

30. Defendants filed a materially incomplete and misleading Proxy Statement with the

SEC and disseminated it to Domtar's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

31. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Company's financial advisor, Morgan Stanley; and (ii) Morgan Stanley's and Company insiders' potential conflicts of interest.

***Material Omissions Concerning the Company's Financial Projections and Morgan Stanley's Financial Analyses***

32. The Proxy Statement omits material information regarding the Company's financial projections.

33. For example, the Proxy Statement fails to disclose the unlevered free cash flows Morgan Stanley utilized in its *Discounted Cash Flow Analysis* for Domtar's business segments, including the unlevered free cash flows for Domtar's paper, pulp and corporate/other segments and the Kingsport operations. The Proxy Statement similarly fails to disclose the line items underlying Domtar's unlevered free cash flows and EBITDA.

34. The Proxy Statement also omits material information regarding Morgan Stanley's financial analyses.

35. The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Domtar's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any,

to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal EBITDA and unlevered free cash flows over the projection period for Domtar's paper, pulp and corporate/other segments and the Kingsport operations; (ii) the quantification of the inputs and assumptions underlying the discount rates ranging from 8.2% to 9.8%; and (iii) quantification of the respective terminal values for the full-Company and the Kingsport operations.

37. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose a quantification of the inputs and assumptions underlying the discount rate of 10.0%.

38. Without such undisclosed information, Domtar stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of the Proposed Transaction or seek appraisal.

39. The omission of this material information renders the statements in the "Forward-Looking Financial Information" and "Opinion of Morgan Stanley & Co. LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's and Company Insiders' Potential Conflicts of Interest***

40. The Proxy Statement is materially deficient because it fails to disclose material

information relating to Morgan Stanley's potential conflicts of interest.

41. For example, the Proxy Statement sets forth:

In the two years prior to the date of its opinion, Morgan Stanley and its affiliates have provided financial advisory and financing services to the Company and have received aggregate fees in connection with such services of approximately $10 million to $20 million in the aggregate. . . . In addition, Morgan Stanley or an affiliate thereof is currently (and was as of the date of its opinion) a lender to the Company.

Proxy Statement at 57.  The Proxy Statement, however, fails to disclose the timing and nature of the services Morgan Stanley performed for the Company, as well as the details of any compensation Morgan Stanley has received, or expects to receive, as a lender to the Company.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by the Company's directors and executive officers.

44. The May 11, 2021 joint press release announcing the Proposed Transaction sets forth, "After the transaction closes, Paper Excellence intends to continue the operations of Domtar as a stand-alone business entity. As such, **Domtar will continue to be led by its management team** and Paper Excellence plans to retain its corporate and production locations."  Emphasis added.

45. However, the Proxy Statement fails to disclose whether Domtar's executive officers have secured employment with the combined company following completion of the Proposed Transaction.  The Proxy Statement further fails to disclose the details of any employment-related discussions and negotiations that occurred between Paper Excellence and Domtar management, including who participated in all such communications, when they occurred,

and their content, as well as whether any of Paper Excellence's prior proposals or indications of interest mentioned management retention with the combined company.

46. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47. The omission of this information renders the statements in the "Opinion of Morgan Stanley & Co. LLC," "Background of the Merger," and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

48. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Domtar stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

51. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the financial analyses performed by the Company's financial advisor, and potential conflicts of interest faced by the Company's financial advisor and Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

53. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

54. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

55. Plaintiff repeats all previous allegations as if set forth in full.

56. The Individual Defendants acted as controlling persons of Domtar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Domtar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

59. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-

9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Domtar's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Domtar, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Domtar stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 8, 2021                              Respectfully submitted,

/s/ Richard A. Acocelli
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*